UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANNA YVETTE MOORE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16CV00296 AGF |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

In this action, pro se Plaintiff Anna Yvette Moore seeks judicial review of the final decision of the Commissioner of Social Security that Plaintiff was overpaid $7,463.37 in Supplemental Security Income ("SSI") benefits from August 2011 through June 2013, due to unstated income and excess resources; that Plaintiff was at fault in causing the overpayment; and that she was liable for repayment of the overpayment. For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for reconsideration and/or clarification of calculations underlying the overpayment determination.

# BACKGROUND

Plaintiff, who was born on July 20, 1966, filed for SSI benefits in May 1992. The application Plaintiff signed stated that the failure to report any change within ten days after

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

the end of the month in which the change occurred could result in a penalty deduction of benefits. The Social Security Administration's ("SSA") Disability Determination and Transmittal dated July 30, 1992, finding that Plaintiff was entitled to SSI, listed Plaintiff's primary diagnosis as Mental Retardation, and secondary diagnosis as Affective (Mood) Disorder. The record indicates that Plaintiff's SSI benefits ranged from approximately $675 to $700 per month.

Sometime prior to April 22, 2013, the SSA initiated a review of Plaintiff's financial eligibility for SSI and requested that she provide copies of her bank statements from March 2011 through April 2013. On April 22, 2013, Plaintiff attested in writing as follows: "There was a cash deposit into my bank account on November 01, 2012 in the amount of $1,803. I had been saving SSI checks so I could make my mortgage payment that I had not paid for several months. The funds went to my mortgage company." Tr. 40.

By letter dated June 4, 2013, the SSA informed Plaintiff that a review of her financial records indicated that she had been overpaid SSI benefits in the amount of $7,463.37 from August 2011 through June 2013 (23 months), and that this was in addition to an old overpayment of $1,276.64 already on her record. The June 4, 2013 letter stated that the basis of the overpayment determination was "multiple unreported deposits (unstated income) into your bank account, and some months your resources (assets) were over the $2,000 SSI allowable resource limit." Tr. 44.

The SSA sent another letter to Plaintiff on June 10, 2013. This letter listed the 23 months at issue and the actual amount the SSA claimed Plaintiff should have been paid for

each of these months. An explanation of the facts upon which these amounts were based followed. For example, the letter stated,

> Your special one-time rents, interest, dividends, or royalties received September 2011 of $0.30, March 2012 of $0.82, June 2012 of $0.32, December 2012 of $0.04 and March 2013 of $0.04.
>
> Your special one-time payment of other unearned income received August 2011 of $800.55, September 2011 of $740.00, February 2012 of $530.00, March 2012 of $1,681.38, April 2012 of $255.00, May 2012 of $1,896.00, June 2012 of $1,100.00, July 2012 of $230.00, August 2012 of $390.00, October 2012 of $310.00, November 2012 of $1,973.00, December 2012 of $46.00, January 2013 of $100.00, February 2013 of $164.00 and March 2013 of $175.00.

Tr. 52.

Month-by-month "worksheets" explaining the purported overpayments accompanied the letter. The worksheets show two months of excess resources and 21 months of unstated income. Tr. 60-79. Some of the worksheets calculate the payment Plaintiff was due for one month, after accounting for miscellaneous income during that month. *See, e.g.,* Tr. 63. Some of these single-month worksheets state, without explanation, that a previous month's income affected the current month's payment due. *See, e.g.*, Tr. 71. In a number of the worksheets, payments due were determined for two or more months. In some of the multiple-month worksheets, a previous month's income was stated as affecting the payments due for the months at issue. *See, e.g.,* Tr. 74 ("How we Figured Your Payment for January 2013 through February 2013"; "Income you receive in December 2012 affects your payment for January 2013 through February 2013.")

Plaintiff's income of $310.00 in October 2012, Tr. 52, was not factored into any of

3

the worksheets. And Plaintiff's income of $46.00 in December 2012 appears to affect the payment due for both December 2012, Tr. 73, and for January 2013 through February 2013, Tr. 74.

The Court's addition of the reported overpayments from August 2011 through June 2013, appearing on Tr. 48,[2] does not result in a sum of $7,463.37, but rather in a sum of $8,443.01.

On June 28, 2013, Plaintiff filed a request for reconsideration. According to SSA records, she stated as follows: "I disagree with the determination made on my claim for [SSI] benefits because I was trying to save mortgage payment. Family members were borrowing my money for various reasons and they would put the money back into my account. I will provide statements from family members about the account activity and reasons for it." Tr. 80. On July 22, 2013, Plaintiff requested a waiver of the overpayment, maintaining that she was not at fault in causing the overpayment.

Plaintiff's request for reconsideration was denied on August 17, 2013, and on August 26, 2013, she requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Plaintiff's request for a waiver was denied by the SSA by letter dated September 3, 2013. Tr. 133. That letter informed Plaintiff that she could request an appeal by asking for one in writing within 60 days of the receiving the letter. Defendant asserts that Plaintiff did not appeal the waiver denial, and Plaintiff does not refute this

---

[2] The SSA did not actually list the overpayments, but just the amounts paid and the purported correct amounts due per month, leaving it for Plaintiff (and the Court on review) to do the subtraction and addition.

4

assertion.

On February 4, 2014, an evidentiary hearing was held before an ALJ, with Plaintiff appearing pro se. Plaintiff testified that her SSI benefits were granted based on a learning disability, and that the SSI benefits and food stamps were her only sources of income. She further testified to the following: She had a checking account with about $300, and no money in a savings account; her mortgage payments were $802.07 a month; an adult daughter lived with her and helped her make the mortgage payments; Plaintiff's utility bills were approximately $235 a month, and her car insurance was $138 a month. The ALJ asked Plaintiff to submit within the next 30 days copies of her checking and savings bank statements for the previous three months.

On March 4, 2014, the ALJ issued a decision concluding that Plaintiff was overpaid $7,463.37 in SSI benefits from August 2011 through June 2013, due to unstated income and excess resources. He concluded that Plaintiff was at fault in causing the overpayment, and that she was liable for repayment of the overpayment. The ALJ found that Plaintiff "could have made arrangements to pay for services of loan modification on a timely basis." Tr. 14. The ALJ did not address the denial of Plaintiff's request for a waiver, but recommended a repayment rate of $50.00 per month, due to Plaintiff's financial condition.

On April 29, 2014, Plaintiff asked the Appeals Council of the SSA to review the ALJ's decision. Tr. 180. She represented that the cause of the overpayment was that her "living situation changed which resulted in [her] bank deposits to look as if there was an excess of resources." Tr. 181. More specifically, she explained that in trying to get a

5

loan modification on her home, she was told not to make any mortgage payments, and she therefore deposited the intended mortgage payments into her saving account to save for future mortgage payments. *Id.* She further explained that she had given personal loans to family and friends and deposited into her savings account their repayments. *Id*.

On November 24, 2015, the Appeals Council notified Plaintiff that it had granted the request for review. Tr. 182-86. The Appeals Council told Plaintiff that it would consider any comments or new and material evidence that she submitted within 30 days from the date of the notice. On January 7, 2017, the Appeals Council affirmed the ALJ's decision as to the amount of the overpayment, noting that no comments or additional evidence had been received. The Appeals Council stated that Plaintiff's "allegation that the deposits were repayments of loans is inconsistent with the fact that she fell behind in her mortgage payments and needed a loan modification to avoid foreclosure." Tr. 208. The Appeals Council "vacated" the ALJ's "waiver findings," stating that because Plaintiff had not appealed the denial of a waiver, that issue was not before the ALJ. Tr. 209-211.

In her pro se complaint filed on March 3, 2016, Plaintiff asserts summarily that the ALJ "made errors," that Plaintiff did not have the opportunity to "bring in other evidence that may be helpful to a final decision," and that she did not intentionally break the rules of the SSA. ECF No. 1 at 1. Defendant argues in its brief in support of the answer that (1) any issues related to Plaintiff's waiver request are not properly before this Court because Plaintiff did not administratively appeal the denial of that request; and (2) substantial evidence supports the decision of the Appeals Council and ALJ regarding the fact and

amount of Plaintiff's overpayment.

**DISCUSSION**

"The basic purpose underlying the [SSI] program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110. "Thus, a claimant . . . otherwise eligible for the SSI program will be denied benefits if he or she has too much income or too many resources." *Dotson v. Shalala*, 1 F.3d 571, 576 n.6 (7th Cir. 1993). Specifically, an unmarried individual (like Plaintiff) is not eligible for SSI if the individual's resources exceed $2,000. 42 U.S.C. §§ 1382(a)(1)(A), (B); 20 C.F.R. § 416.1205. In addition, the amount of benefits that an otherwise eligible claimant may receive depends upon the claimant's income and assets. 42 U.S.C. § 1382(b). The regulations define "resources" to include savings and checking accounts. 20 C.F.R. § 416.1201(a), (b). "Income" includes wages paid and net earnings from self-employment. 42 U.S.C. § 1382a(a)(1)(A), (B).

Pursuant to 20 C.F.R. § 416.708, SSI recipients are required to report to the SSA, inter alia, a change in income and a change in resources. The Social Security Administration's Program Operations Manual System ("POMS") defines "unstated income: as "income not reported or otherwise known to SSA but determined to exist because an individual's . . . living expenses exceed income from known sources. POMS § SI 00810.035. The POMS further provide as follows:

7

> Failure to disclose income may be due to a lack of understanding of reporting responsibilities and types of income that affect SSI eligibility and payments amounts. Misunderstandings may arise when income is received in kind, including in-kind income derived from third-party payments on behalf of the individual. There may also be a reasonable explanation for a discrepancy between income and living expenses, e.g., savings are being used, work ended recently, debts have been incurred, outstanding bills have not been paid.

*Id*.

Section 404 of the Social Security Act sets forth the procedures for recovery of an overpayment of benefits. This section provides, in relevant part that "[i]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). The party seeking a waiver bears the burden of proving she was without fault. *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000). "Whether an individual is without fault depends on all the pertinent circumstances surrounding the overpayment in the particular case." 20 C.F.R. § 416.552. In assessing fault, the SSA "considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental

condition)." *Id.* Generally, recovery of an overpayment will defeat the purpose of the SSI program if it will deprive the person of income required for ordinary and necessary living expenses. 20 C.F.R. § 416.553.

"[T]he Commissioner bears the burden of proving the fact and amount of overpayment." *McCarthy*, 221 F.3d at 1124. The Commissioner's decision with respect to recovery of an overpayment must be affirmed if it is supported by substantial evidence on the record as a whole, and complies with the relevant legal requirements. *Coulston v. Apfel*, 224 F.3d 897, 901 (8th Cir. 2000). "The Court will affirm the Commissioner's [overpayment] decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion." *Watts v. Astrue*, No. 4:09-CV-1753 CAS, 2011 WL 1060947, at *2 (E.D. Mo. Mar. 21, 2011). "Substantial evidence is less than a preponderance of the evidence, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Jefferson v. Colvin*, No. 1:15-CV-97 CAS/ACL, 2016 WL 5402993, at *14 (E.D. Mo. Sept. 28, 2016) (citation omitted). "The ALJ has a duty to develop facts fully and fairly, especially in a case where the claimant is not represented by counsel." *Id.* And it is the court's duty to determine whether the "ALJ adequately protected the rights of a pro se litigant by ensuring that all of the relevant facts are sufficiently developed and considered." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2nd Cir. 1982).

**Fact and Amount of Overpayment**

The Court finds this case problematic on several accounts. Neither the ALJ nor the Appeals Council appear to have conducted an actual review of the SSA's calculations arriving at the $7,463.37 figure. The agency's explanation to Plaintiff of how it arrived at the amount of the overpayment is clearly deficient. For example, why did her income in one month impact her payment due in another month? Why was her income in December 2012 apparently counted more than once? As suggested above, the Court's own review of the record points to deficiencies in the SSA's mathematics as well as in the explanation provided to Plaintiff with regard to the methodology used to calculate the overpayment charged. Defendant's brief before the Court does not present a review of the calculations or explanation for the questions noted by the Court.

Based on the record as it now stands, the Court cannot find that substantial evidence in the record as a whole supports the agency decision with respect to the amount of an overpayment.

**Waiver**

The Court must assume that in specifically finding that Plaintiff was at fault in causing the overpayment, the ALJ was making an implicit finding that she was not entitled to a waiver.[3] As noted above, a waiver is precluded under 42 U.S.C. § 404(b)(1), when the claimant was at fault in causing it. The Court also believes that given the timing of the

---

[3] The Court is puzzled that both the Appeals Council and Defendant's brief to the Court state that the ALJ determined that Plaintiff was entitled to a waiver.

request for an evidentiary hearing, and Plaintiff's pro se status, the ALJ was entitled to consider the matter of a waiver; and, further, that this Court may address the matter on judicial review. *See Rankin v. Heckler*, 761 F.2d 936, 940-42 (3d Cir.1985) (holding that the court had jurisdiction to consider the validity of the cessation of benefits where the ALJ considered the matter even though the claimant did not file a timely administrative appeal of the cessation decision); *see also Sims v. Apfel*, 530 U.S. 103, 112 (2000) (holding that a Social Security claimant need not exhaust issues in a request for review to the Appeals Council in order to preserve judicial review of those issues).

Upon review of the record it does not appear that the ALJ took into account factors such as Plaintiff's comprehension and mental condition.[4] On remand, Plaintiff's entitlement to a waiver should also be addressed in full.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision by the Commissioner is **REVERSED** and this case is **REMANDED** with instructions to (1) review the calculations and methodology underlying the determination of the amount of any overpayment paid to Plaintiff, and provide a better explanation of the determination (or redetermination); (2) re-evaluate whether Plaintiff was at fault in causing an overpayment,

---

[4] Further, the ALJ's statement that Plaintiff "could have made arrangements to pay for services of loan modification on a timely basis," Tr. 14, really does not address Plaintiff's explanation that she was delaying monthly payments because she believed that was necessary to seeking a loan modification.

11

taking further testimony as necessary; and (3) proceed, if appropriate, to an analysis of whether recovery of the overpayment would defeat the purposes of the relevant statute, be against equity and good conscience, or impede the scheme's efficient or effective administration.

A separate Judgment shall accompany this Memorandum and Order.

                                                         _____
                                                         AUDREY G. FLEISSIG
                                                         UNITED STATES DISTRICT JUDGE

Dated on this 26th day of September, 2017